Citation Nr: 1132131 
Decision Date: 08/31/11 Archive Date: 09/07/11

DOCKET NO. 05-29 018 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Houston, Texas


THE ISSUES

1. Entitlement to service connection for bilateral hearing loss disability.

2. Entitlement to service connection for tinnitus.


REPRESENTATION

Appellant represented by: The American Legion


WITNESS AT HEARING ON APPEAL

Appellant and Appellant's Daughter


ATTORNEY FOR THE BOARD

L.J. Bakke, Counsel


INTRODUCTION

The veteran served on active duty from November 1966 to October 1968. 

This appeal arises before the Board of Veterans' Appeals (Board) from a rating decision rendered in April 2004 by the Department of Veterans Affairs (VA) Regional Office (RO) in Houston, Texas.

This case was remanded in November 2008, September 2009, and August 2010. It is now again before the Board. The veteran testified before the undersigned Veterans Law Judge in May 2010. A transcript of the hearing is associated with the claims file.


FINDINGS OF FACT

1. The evidence for and the evidence against the Veteran's claim for service connection for bilateral hearing loss disability is in relative equipoise. 

2. The evidence for and the evidence against the Veteran's claim for service connection for tinnitus is in relative equipoise. 


CONCLUSIONS OF LAW

1. Giving the Veteran the benefit of the doubt, the criteria for service connection for bilateral hearing loss disability have been met. 38 U.S.C.A. §§ 1110, 1112, 1131, 1137, 5107 (West 2002); 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.385 (2010).

2. Giving the Veteran the benefit of the doubt, the criteria for service connection for tinnitus have been met. 38 U.S.C.A. §§ 1110, 1112, 1131, 1137, 5107 (West 2002); 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.310, 3.385 (2010).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

In light of the favorable action taken herein, discussion of whether VA has met its duties of notification and assistance is not required, and deciding the appeal at this time is not prejudicial to the veteran.

Service connection will be granted for disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 1131. Service connection requires competent evidence showing: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); see also Hickson v. West, 12 Vet. App. 247 (1999).

For certain chronic disorders, including sensorineural hearing loss disability, service connection may be granted if the disease becomes manifest to a compensable degree within one year following separation from service. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1131, 1137 (West 2002); 38 C.F.R. §§ 3.307, 3.309 (2010), see also VA Under Secretary for Health letter dated October 4, 1995 (stating that it is appropriate for VA to consider sensorineural hearing loss disability as an organic disease of the nervous system and, therefore, a presumptive disability).

In the alternative, pursuant to 38 C.F.R. § 3.303(b) (2010), entitlement to service connection may be established by two other means-chronicity and continuity of symptomatology. Chronicity is established if the appellant can demonstrate (1) the existence of a chronic disease in service and (2) present manifestations of the same disease. Groves v. Peake, 524 F.3d 1306, 1309 (Fed. Cir. 2008). Continuity of symptomatology may be established if the appellant can demonstrate (1) that a condition was "noted" during service; (2) evidence of post service continuity of the same symptomatology; and (3) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post service symptomatology. Kent v. Nicholson, 20 Vet. App. 1, 13-14 (2006) (citing Savage v. Gober, 10 Vet. App. 488, 495 (1997). See also 38 C.F.R. § 3.303(b).

In addition to the regulations cited above, service connection is warranted for a disability, which is aggravated by, proximately due to, or the result of a service-connected disease or injury. 38 C.F.R. § 3.310 (2010). Any additional impairment of earning capacity resulting from an already service-connected condition, regardless of whether or not the additional impairment is itself a separate disease or injury caused by the service-connected condition, should also be compensated. Allen v. Brown, 7 Vet. App. 439 (1995). When service connection is thus established for a secondary condition, the secondary condition shall be considered a part of the original condition. Id.

The Board notes that 38 C.F.R. § 3.310 was amended effective October 10, 2006. Under the revised § 3.310(b) (the existing provision at 38 C.F.R. § 3.310(b) was moved to sub-section (c)), any increase in severity of a nonservice-connected disease or injury proximately due to or the result of a service-connected disease or injury, and not due to the natural progress of the disease, will be service-connected. As the Veteran filed his claim prior to 2006, this more restrictive provision is not applicable to the current claim.

Service connection for impaired hearing shall only be established when hearing status as determined by audiometric testing meets specified pure tone and speech recognition criteria. Audiometric testing measures threshold hearing levels (in decibels) over a range of frequencies (in Hertz). See Hensley v. Brown, 5 Vet. App. 155, 158 (1993).

The determination of whether a veteran has a disability based on hearing loss is governed by 38 C.F.R. § 3.385. For the purposes of applying the laws administered by VA, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. See 38 C.F.R. § 3.385 (2010).

The Veteran contends that he sustained acoustic trauma during active service, and that this caused his present hearing loss and tinnitus. Specifically, he testified before the undersigned Veteran's Law Judge May 2010 that he was exposed to small arms fire in basic training, during which time he first noticed ringing in his ears and decreased ability to hear. Thereafter, while stationed in Germany, he was exposed to tank fire and .50 caliber fire during maneuvering exercises. He testified that he was a medic and that he was stationed with his ambulance about 20 yards from the tanks that were firing. This occurred once every other month or so. The Veteran and his witness, the Veteran's daughter, further testified that the Veteran manifested symptoms of hearing impairment, including ringing in his ears and decreased hearing acuity, since he was in basic training and throughout his daughter's lifetime. The Veteran's daughter testified that she has always known her father to be unable to hear. 

VA treatment records dated in November 2007 show the Veteran was observed to manifest hearing impairment and that he had VA-issued hearing aids. The Board, in its August 2010 remand, accepted the VA treatment entry as competent evidence establishing that the Veteran manifests hearing impairment. However, the evidence at that time did not establish that the severity of impairment rose to the level necessary to establish a disability for VA purposes. In addition, the Board also accepted the Veteran's testimony and that of his witness as establishing continuity of hearing impairment symptomatology from active service to the present, and from approximately 1973 to the present, respectively. Unfortunately, at that time, there were no findings of audiometric testing of record. Accordingly the Board remanded the claim for such testing to be conducted to determine whether the Veteran had a current disability for VA purposes. 

A September 2010 VA audiological examination report shows that the Veteran reported service as a medic from 1966 to 1968 and a history of military noise exposure to firing range, .50 caliber fire, and tank fire. He reported no noise exposure in civilian life. He reported currently experiencing constant tinnitus with onset 40 years ago, which would be approximately 1970. Audiological examination reflects the following audiometric measurements in pure tone thresholds:


HERZ

500
1000
2000
3000
4000
RIGHT
1
1
1
1
1
LEFT
1
1
1
1
1

CNC Maryland speech testing obtained results too unreliable to score. The audiologist commented that inter-test reliability was judged to be poor and the Veteran gave inconsistent responses to both tones and speech. Pure tone average was measured at more than 30 decibels above speech reception level in both ears. But, the audiologist noted, it would be impossible to be able to repeat back words at a significantly lower level than at which one can hear tones. The two measures would be essentially equal in a reliable test. Type A tympanogram suggested normal middle ear function.

Tinnitus was noted as the only ear impairment diagnosed. The audiologist noted that valid hearing thresholds could not be obtained because the Veteran would not or could not respond consistently to speech or puretone stimuli, and opined that any ear (tinnitus) or hearing impairment was less likely than not caused by or a result of the Veteran's active military service. As rationale, the audiologist explained that service treatment records revealed no clinically significant threshold shift when comparing audiometric thresholds obtained on the enlistment physical to that obtained on the separation physical. Hearing was normal in both ears at the time of enlistment and separation, therefore any current hearing loss the Veteran may have is not related to noise exposure in service. The audiologist observed that there was no documentation of tinnitus in the service treatment records or for more than 30 years after separation. Essentially, the evidence reflected that noise exposure in service was not sufficient to cause any significant threshold shift and therefore, was not likely sufficient to produce tinnitus.

The audiologist noted that the claims file was reviewed, but that no private treatment records were reviewed and that pertinent evidence consisted of the Veteran's enlistment and separation physicals. Of particular importance is that the audiologist did not show that the Veteran's testimony before the Board had been reviewed. Furthermore, the audiologist did not discuss VA treatment records showing hearing impairment and indicating that the Veteran had VA-issued hearing aids as early as 2007. Moreover, review of the record reflects that the VA examination was conducted prior to the receipt of records from the Social Security Administration (SSA).

While these deficiencies would be sufficient to render the September 2010 VA examination findings inadequate for the purpose of adjudication of this claim, it is noted that the examination itself obtained no meaningful results. In addition, it appears that the audiologist based her opinion on the Veteran's normal hearing at discharge. However, as the Court has held that an absence of hearing loss disability at discharge from active service is not fatal to a claim for hearing impairment. See Ledford v. Derwinski, 3 Vet. App. 87, 89 (1992); see also Hensley v. Brown, 5 Vet. App. 155, 159 (1993). The September 2010 VA examination does not therefore provide an adequate basis upon which to adjudicate this claim. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007); see also Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008).

This case has been remanded twice in an effort to obtain information concerning the Veteran's degree and type of hearing impairment as documented in VA treatment records in November 2007 and, failing that, by affording him VA audiological evaluation, in September 2010-to no avail. The Board finds it is not in the Veteran's interest or that of VA to remand this claim yet again. It will therefore decide the claims on the evidence of record. Sabonis v. Brown, 6 Vet. App. 426, 430 (1994) (remands which would only result in unnecessarily imposing additional burdens on VA with no benefit flowing to the veteran are to be avoided); see also Stegall v. West, 11 Vet. App. 268, 270-71 (1998).

In September 2010, the Veteran forwarded results of a private audiological evaluation conducted in the same month. While these results are noted on a pictorial graph without numerical interpretation, it can be deduced that the Veteran has hearing loss disability for VA purposes. Namely, the graph portrays that no Hertz levels, left or right, measured less than 80 decibels. In consideration of private audiological results showing bilateral hearing loss disability and the November 2007 VA treatment entry reflecting hearing loss for which the Veteran had VA-issued hearing aids, the preponderance of the evidence cannot be against a finding that the Veteran has bilateral hearing loss disability. Rather, the present case presents a situation where the evidence for and the evidence against the claim appear to be in relative equipoise. 

In addition, the September 2010 VA examination shows that tinnitus was noted to be present.

Service treatment records show no complaints findings of hearing impairment. Rather, audiometric findings of hearing acuity measured at discharge from active service appear to show improvement when compared to that measured at entrance to active service:


HERZ
Sept 1966
500
1000
2000
3000
4000
RIGHT
20
5
5
--
20
LEFT
20
15
15
--
15


HERZ
July 1968
500
1000
2000
3000
4000
RIGHT
-5
-5
-5
--
-5
LEFT
0
0
0
--
0

Service personnel records show that the Veteran's military occupational specialties (MOSs) were 91A10 and 91B20, medical corpsman and medical specialist. From November 1967 to October 1968, he was stationed in Germany with the 581st Medical Company. His principal duty was as an ambulance orderly and ambulance driver. This is consistent with the Veteran's sworn testimony before the Board. The Board finds that the Veteran's testimony and that of his witness is credible. 

Although the evidence does not show that the Veteran was treated for or diagnosed with hearing loss disability or tinnitus during service, the Board notes that the question is nevertheless whether the current condition is at least as likely the result of the injury he sustained in service, i.e., the acoustic trauma, as it is the result of another factor or other factors not related to service. 38 C.F.R. § 3.303(d). See also Ledford, supra; Hensley, supra. As above noted, the testimony of the Veteran's witness establishes continuity of hearing symptomatology since approximately 1973. 

The Veteran and his witness are competent to describe experiences and symptoms that result therefrom. See Jandreau, 492 F. 3d 1372 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F. 3d 1331 (Fed. Cir. 2006). The Veteran has not claimed he has the medical expertise to diagnose a hearing loss disability, but the Board observes that he has had basic medical training. In general, lay witnesses are not competent to provide opinions relating to the diagnoses or etiology of disease or disabilities because laypersons are not trained in the field of medicine. Id; see also Espiritu v. Derwinski, 2 Vet. App. 492, 494-95 (1992). Notwithstanding, the Veteran has testified under oath in the present case. Given the corroborating medical evidence of hearing impairment and tinnitus, and given the absence of other competent medical evidence concerning the etiology of this manifested hearing impairment, the Board finds that the Veteran's observations are sufficient to render the evidence to be in equipoise as he has had medical training and the symptoms observed-inability to hear and a ringing in the ears-are the kind of symptoms that lend themselves to lay observation. 

In general, the Board is responsible for assessing the credibility and weight to be given to the evidence. See Hayes v. Brown, 5 Vet. App. 60, 69-70 (1993). Such assessments extend to medical evidence. See Guerrieri v. Brown, 4 Vet. App. 467, 470-71 (1993) (the probative value of medical evidence is based on the physician's knowledge and skill in analyzing the data, and the medical conclusion reached; as is true of any evidence, the credibility and weight to be attached to medical opinions are within the province of the Board).

Based on the foregoing, there is at least an approximate balance of positive and negative evidence regarding the issues at hand, and the Board finds that the evidence raises at least a reasonable doubt as to whether the Veteran's current hearing loss disability was incurred in service. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.

In addition, because the Board is granting service connection for hearing loss disability in this decision, the question arises as to whether service connection for tinnitus may also be considered on a secondary basis, i.e., as proximately due to or the result of the service-connected hearing loss disability. 38 C.F.R. § 3.310(a). In this regard, the Board notes that "an associated hearing loss is usually present" with tinnitus. The Merck Manual, Sec. 7, Ch. 82, Approach to the Patient with Ear Problems. In addition, tinnitus may occur as a symptom of nearly all ear disorders including sensorineural or noise-induced hearing loss. Id. Finally, the Board notes that "high frequency tinnitus usually accompanies [noise-induced] hearing loss." The Merck Manual, Sec. 7, Ch. 85, Inner Ear. While having to rely on its own reading of medical treatise evidence regarding a relationship between tinnitus and sensorineural hearing loss is not evidence that the Board would find as useful as the report of a qualified examiner who could discuss such a relationship in this particular case, the Board finds, as it did with the claim for service connection for hearing loss disability, that the evidence provides a sufficient basis in this case on which to resolve reasonable doubt in favor of the Veteran rather than remanding the claim for a more complete opinion in view of the length of time the claim has been pending and that previous remands have been made for similar information to no avail.

Accordingly, finding the evidence to be in equipoise, all reasonable doubt will be resolved in the Veteran's favor. Service connection for bilateral hearing loss disability and tinnitus is warranted. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. 



ORDER

Service connection for bilateral hearing loss disability is granted.

Service connection for tinnitus is granted.




____________________________________________
DAVID L. WIGHT
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs