NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**RUBY MCFADDEN,**
*Claimant-Appellant,*

v.

**ERIC K. SHINSEKI, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee.*

---

2010-7031

---

Appeal from the United States Court of Appeals for Veterans Claims in Case No. 07-3529, Judge Lawrence B. Hagel.

---

Decided: January 11, 2011

---

PATRICIA NATION, Nation Law Firm PLLC, of Little Rock, Arkansas, for claimant-appellant.

JAMES SWEET, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent-appellee. With him on the brief were TONY WEST, Assistant Attor-

ney General, JEANNE E. DAVIDSON, Director, and
KENNETH M. DINTZER, Assistant Director.  Of counsel on
the brief were MICHAEL J. TIMINSKI, Deputy Assistant
General Counsel, and TRACEY P. WARREN, Staff Attorney,
United States Department of Veterans Affairs, of Wash-
ington, DC.

---

Before NEWMAN, DYK, *Circuit Judges*, and WHYTE, *District Judge*.[*]

NEWMAN, *Circuit Judge*.

Ruby McFadden appeals the decision of the Court of
Appeals for Veterans Claims affirming the Board of
Veterans' Appeals denial of certain benefits relating to
her deceased husband's gallbladder cancer.[1]  Because by
statute we cannot review fact-related challenges raised by
Mrs. McFadden, and because the Court of Veterans
Claims (Veterans Court) applied correct legal principles,
we affirm the decision of the Court of Veterans Claims.

BACKGROUND

Mrs. McFadden's late husband, William McFadden,
served this country in the Army from December 1950 to
October 1952, during the Korean Conflict era.  Mr.
McFadden was stationed at Fort Hood, Texas, and in
Germany during that time.  In October 2002 Mr. McFad-
den was diagnosed with gallbladder cancer.  On October
22, 2003 Mr. McFadden applied through the Department
of Veterans Affairs ("VA") for service connection for

---

[*]    Honorable Ronald M. Whyte, District Judge,
United States District Court for the Northern District of
California, sitting by designation.
[1]    *McFadden v. Shinseki*, No. 07-3529, 2009 WL
3157558 (Vet. App. Sept. 30, 2009).

gallbladder cancer, diabetes, emphysema, and hearing and vision loss.[2]   The VA could not obtain all of Mr. McFadden's service medical records because the National Personnel Records Center ("NPRC") in St. Louis, where most of Mr. McFadden's records had been stored, reported that the records had been destroyed in a large fire at the facility in 1973.  Mr. McFadden also did not have a copy of his records and could not recall the possible dates that he might have received any treatment.  The VA concluded that further efforts to obtain Mr. McFadden's service medical records would be futile.

The only service medical record available was a separation examination, which included a medical history form completed by Mr. McFadden.  The examination revealed normal clinical evaluations, including a normal abdomen.  In the form filled out by Mr. McFadden, he wrote "good" to describe his present health and marked "yes" and "no" boxes concerning whether he had ever had certain conditions or symptoms.  He checked "no" in the box asking whether he had ever had "stomach, liver or intestinal trouble."

During the processing of his claim before the VA Regional Office, Mr. McFadden filed a statement explaining that he had stomach cramps while in the service.  He said that the water at Fort Hood made him sick, so he drank milk instead of water until a doctor told him he should start drinking water.  According to his statement, he started drinking water again and his stomach continued to cramp.  Mr. McFadden reported that when he came home from the Army he went to the VA and was diagnosed with "German flu."  He further reported that he

---

[2]   Mrs. McFadden's subsequent appeals relate only to gallbladder cancer.

continued to have stomach pain through the years, and that he believed that iron in the water during his military service caused his gallbladder cancer. Mr. McFadden could not recall whether he had received treatment for stomach pain while in service, but was treated for a "nervous" stomach in the years following his service. Mr. McFadden also submitted a statement from his brother indicating that Mr. McFadden was sick when he returned home from the Army and had experienced stomach cramps. Mr. McFadden authorized the VA to obtain medical records from doctors who had treated him for stomach cramps, nervous stomach, and nausea after he returned home from service. The VA attempted to do so but was unsuccessful. The VA concluded that the doctors were deceased and the records unavailable.

The VA denied Mr. McFadden's claims for benefits in August 2004. He appealed to the Board of Veterans' Appeals (Board), and submitted additional statements from friends who recalled Mr. McFadden reporting stomach pains ever since he had been in the military. He also submitted information from the American Cancer Society website about gallbladder cancer, and a letter from a doctor who had recently examined him. The doctor, Dr. Morris, concluded that "it is a possibility that Mr. McFadden['s] medical condition may have been related to his military services," relying in part on medical history provided by Mr. McFadden. Mrs. McFadden also testified before the Board that Mr. McFadden wrote home during service that he was having trouble with and seeking treatment for stomach pains. She stated that Mr. McFadden continuously sought VA treatment for stomach pains from the time he returned home until he was diagnosed with gallbladder cancer in 2002 and began chemotherapy.

Mr. McFadden died of gallbladder cancer on July 9, 2005 while his appeal was pending. Mrs. McFadden then filed an application for dependency and indemnity compensation benefits for the cause of her husband's death and asserted that she was entitled to accrued benefits based on Mr. McFadden's pending appeal for service connection. The Regional Office denied Mrs. McFadden's claims.

Mrs. McFadden appealed to the Board. The Board denied her claims on August 3, 2007. The Board found that the available service medical records did not show any diagnosis of gallbladder cancer. The Board also found that there was no competent medical evidence linking Mr. McFadden's gallbladder cancer to military service. The Board determined that the "VA made all efforts to notify and to assist the appellant with regard to the evidence obtained, the evidence needed, the responsibilities of the parties in obtaining the evidence, and the general notice of the need for any evidence in the appellant's possession." Board Decision at 4. The Board stated that in light of the destruction of records in the NPRC fire, the Board had a heightened obligation to explain its findings and conclusions and to consider carefully the benefit-of-the-doubt rule, citing *O'Hare v. Derwinski*, 1 Vet. App. 365, 367 (1991), and *Pruitt v. Derwinski*, 2 Vet. App. 83, 85 (1992). The Board concluded, however, that case law does not lower the legal standard for proving a claim for service connection. "It merely increases the Board's obligation to evaluate and discuss in its decision all of the evidence that may be favorable to the veteran." Board Decision at 6.

The Board went on to evaluate the evidence, including the separation medical records, clinical documentation of the gallbladder cancer, the American Cancer Society

information, the statements of family and friends regarding Mr. McFadden's reports of stomach pain, and Dr. Morris' opinion that the cancer was possibly related to Mr. McFadden's military service. The Board concluded that "[t]he initial manifestations of these disorders, 40 or more years following service separation, are too remote in time from service to support the claim that these conditions are related to service absent objective evidence to the contrary." *Id.* at 8–9. Regarding Dr. Morris' opinion, the Board stated that it was not bound to accept medical opinions based solely on medical history as provided by the veteran. The Board also stated that "where a physician is unable to provide a definite causal connection, as here, the opinion on that issue constitutes 'what may be characterized as "non-evidence."'" *Id.* (quoting *Perman v. Brown*, 5 Vet. App. 237 (1993)). In denying service connection for accrued benefits and for the cause of death, the Board stated that it considered the benefit-of-the-doubt rule but concluded it could not apply since the preponderance of the evidence was against the veteran's claim.

Mrs. McFadden appealed to the Veterans Court. The Veterans Court reviewed the factual findings of the Board in detail and found that they were not clearly erroneous. The court disagreed with Mrs. McFadden's argument that the Board failed to take into account all of the favorable evidence. The court found that the Board did not reject Dr. Morris' medical opinion solely because the opinion was based on facts supplied by the veteran, since the Board also explained that the opinion was too speculative. The court discussed the impropriety of suggesting that Dr. Morris' opinion was "non-evidence," but concluded that the error was harmless because the opinion was insufficient to establish service connection. The Veterans Court concluded that

the Board's analysis survives, but barely. The
Board appears to require that a medical opinion
be unequivocal to be competent. *See* R. at 9. Evi-
dence is only incompetent, however if it cannot be
considered by the trier of fact at all; that is,
through some legal prohibition. As long as a per-
son is qualified to provide an opinion, that opinion
is competent, though the trier of fact may believe
that the opinion's probative value is minimal.
Further, the Board misstates the law when it
states that it need not consider a medical opinion
based solely on history given by the veteran. This
fact may be considered when determining the pro-
bative value of a doctor's opinion, but the opinion
cannot be wholly discarded solely for this reason.
*See Kowalski* [*v. Nicholson*, 19 Vet. App. 171, 179
(2005)]. Finally the Board refers to Dr. [Morris']
statement as having "no probative value" because
it alone is "insufficient to establish service connec-
tion." R. at 9. This is a misstatement of the law,
as any competent opinion must be considered,
along with other evidence, when determining if
service connection is warranted; such evidence
need not establish service connection by virtue of
its own weight.

*McFadden*, No. 07-3529, slip op. at 7 n.4.

The Veterans Court also evaluated Mrs. McFadden's
argument that the destruction of the service medical
records in the fire required the VA to decide the claims in
her favor. The court explained that absent evidence of
bad faith or negligence, an adverse presumption of service
connection is not warranted, citing *Cromer v. Nicholson*,
455 F.3d 1346, 1350–51 (Fed. Cir. 2006). The court also
concluded that there is no heightened benefit of the doubt

where a claimant's service medical records have been destroyed, but in such circumstances the Board has a heightened obligation to evaluate and discuss in its decision all of the evidence that may be favorable to the appellant. The Veterans Court affirmed the decision of the Board denying service connection for accrued benefits and for the cause of Mr. McFadden's death. Mrs. McFadden appeals.

## DISCUSSION

Our jurisdiction to review decisions of the Veterans Court is limited by statute. Under 38 U.S.C. §7292(d), this court is to review the law applied by the Veterans Court and hold unlawful an incorrect "regulation or any interpretation thereof." However, the court may not review "(A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case," except to the extent an appeal presents a constitutional issue. *Id.* §7292(d)(2).

Several of the arguments made by Mrs. McFadden on appeal seek review of factual matters or application of law to the facts of this case. For example, Mrs. McFadden argues that the Board failed to provide an adequate statement of the reasons or bases for its determinations, as required by 38 U.S.C. §7104(d)(1). The Veterans Court reviewed the Board's decision, and concluded that it met the standard of §7104(d)(1). This required the Veterans Court to apply the law of §7104(d)(1) to the essentially factual question of how the Board explained its decision. Under §7292, this court cannot review this question again on appeal. *See Cook v. Principi*, 353 F.3d 937, 941 (Fed. Cir. 2003) (holding that §7292 precludes review of application of §7104(d)(1) to the fact of Board's failure to discuss certain evidence in its decision). Likewise, the

issue of whether there is sufficient evidence to establish service connection is an issue of fact. *Waltzer v. Nicholson*, 447 F.3d 1378, 1380 (Fed. Cir. 2006). Because §7292 precludes our review of these issues, we will review the arguments presented by Mrs. McFadden only to the extent they present legal issues relied upon by the Veterans Court.

Mrs. McFadden argues that the Veterans Court committed legal error in rejecting Dr. Morris' opinion as incompetent and having no probative value. The basis for this argument appears to be certain misstatements of the law in the Board's decision. For example, the Board stated that it need not consider a medical opinion based solely on a history given by the veteran. However, the Veterans Court noted these inaccuracies and concluded that they did not affect the Board's final conclusion as to service connection. *See McFadden*, No. 07-3529, slip op. at 6–7. The Veterans Court's analysis does not reveal any misinterpretation of the law applicable to Dr. Morris' opinion, and this court may not venture further to determine whether the Veterans Court's proper legal statements were correctly applied to the facts of this case.

The primary legal argument made by Mrs. McFadden is that due to the destruction of Mr. McFadden's service medical records in the NPRC fire, the Board had a "heightened obligation to *give* the benefit-of-the-doubt to the claimant, especially where the BVA cite[s] no evidence or facts by which to impeach or contradict the claimant," citing 38 U.S.C. §5107 and 38 C.F.R. §3.102. Reply Br. 16. Mrs. McFadden argues that the benefit-of-the-doubt rule operates to shift the burden of persuasion in this case from the claimant to the VA.

This court has rejected the argument that destruction of records in the 1973 NPRC fire results in an adverse presumption against the government that lowers or shifts the burden of proof. *See Cromer v. Nicholson,* 455 F.3d 1346, 1350–51 (Fed. Cir. 2006).[3] The VA does have its usual duty to assist under 38 U.S.C. §5103A, as well as a heightened duty to explain its findings in cases involving lost records, *Cromer*, 455 F.3d at 1351 (citing *O'Hare v. Derwinski*, 1 Vet. App. 365, 367 (1991)). The Veterans Court found those duties satisfied here, and Mrs. McFadden presents no basis on which we may review those findings in this case.

Mrs. McFadden also points out that the VA does not offer evidence contradictory to that offered by her, and thus argues that there is at least as much positive evidence as there is negative. "When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant." 38 U.S.C. §5107(b). The determination of whether the evidence is in approximate balance in this case is beyond the statutory authority of this court given in §7292, but the court may reference the facts of this case in determining whether the Veterans Court applied the correct law. Here, the court is presented with the legal question of whether the failure to rebut positive evidence offered by the veteran requires application of the benefit-of-the-doubt rule, even where the Board and Veterans Court determine that the evidence offered by the veteran

---

[3] The government mistakenly states that *Cromer* was decided *en banc*. While not an *en banc* decision, as an earlier panel decision *Cromer* is the law of this circuit unless overturned *en banc*.

does not show that it is more likely than not that the disability is service connected.

The only evidence connecting Mr. McFadden's gallbladder cancer to service was Dr. Morris' opinion that "it is a possibility" that the gallbladder cancer "may have been" related to Mr. McFadden's military service. This opinion assumed that Mr. McFadden's stomach pains began in service and continued thereafter, which is in accordance with the lay evidence as to Mr. McFadden's stomach pains and might have been further supported by the unavailable medical records. This court has held that a medical "examiner's statement, which recites the inability to come to an opinion, provides neither positive nor negative support for service connection" for purposes of the benefit of the doubt rule. *Fagan v. Shinseki*, 573 F.3d 1282, 1289 (Fed. Cir. 2009). Although all pertinent medical and lay evidence must be considered, *id.* at 1290 n.4 (citing *Hogan v. Peake*, 544 F.3d 1295, 1298 (Fed. Cir. 2008)), there is no justification for shifting the burden of proof or applying an adverse presumption when there is no medical evidence that a nexus between the disability and service is more than a possibility. Absent special circumstances justifying an adverse presumption or shift in the burden of proof, the benefit of the doubt statute, 38 U.S.C. §5107(b), does not alter the minimum level of evidence needed to establish the requisite nexus. The Veterans Court's decision reveals no misinterpretation of the statute in this case. Accordingly, we affirm the decision of the Veterans Court.

No costs.

**AFFIRMED**